## MARIA H. G. CLEMENT AND OTHERS *vs.* CHARLES H. BRAINARD.

A testator directed by his will that, after the payment of certain legacies, among which was a gift of $400 per year to a sister, his property, except certain real estate in *W*, should be divided into fifty parts, of which twenty parts, with the real estate in *W*, should be held by *B* in trust for the testator's son *H* during his life time, and after his death be delivered to *H's* children, with power on the part of the trustee to sell at his discretion and invest the avails. After *H's* death, and after the real estate in *W* had been sold by *B* and converted into money, the children of *H* brought a bill in equity against him, praying for an account and the payment or delivery to them of the money and property in his hands. A committee found the amount due, and the value of the property. *B* was executor of the will as well as trustee. Held—

1.   That the Superior Court had no power to order *B* to distribute the property, except the proceeds of the real estate in *W*, among the petitioners, the court of probate alone having jurisdiction.

2.   That there could not be a final distribution by the court of probate until the death of the sister of the testator, since the executor had a right, in the absence of any order of the probate court to the contrary, to retain the property, except the real estate in *W*, for the purpose of paying her annuity.

3.   That if a distribution could be ordered by the court, it would not be based upon the valuation of the property made by the committee, but upon the value at the time of distribution.

4.   That if the petitioners were entitled to recover their share of the property in money by a proceeding in the Superior Court, it would only be after a distribution had been made in probate and a reasonable time had elapsed for turning the share set to them into money.

5.   That the ordering of the payment of the income of the twenty shares held in trust for *H* and his children, was wholly a matter for the court of probate, the twenty shares not admitting of ascertainment until the fifty shares were ascertained, which could be done only on a final distribution, and the amount of income to be paid over in the meantime not being a fixed sum but depending upon allowances to be made out of it for expenses and for the services of the executor.

6.   That the real estate in *W*, having been given specifically to the trustee, the court had power to compel him at once to account for the income and proceeds of the property.

7.   That having sold this real estate, and used the money in his business, and refusing to account for the profits made with it, he was equitably chargeable with compound interest upon the amount.

It seems that, where an estate is ample, and final distribution is necessarily delayed, while legatees stand in pressing need of their portions, a partial distribution may be ordered by the probate court, of either principal or income.

BILL IN EQUITY for an account, and for the payment to the

Clement *v.* Brainard.

petitioners of money in the respondent's hands as a trustee; brought to the Superior Court in Hartford County. Facts found by a committee, and the case reserved upon the facts found for the advice of this court. The case is sufficiently stated in the opinion.

*C. E. Perkins* and *J. H. Brocklesby,* for the petitioners.

*R. D. Hubbard* and *T. G. Welles,* for the respondent.

Loomis, J. This is a bill in equity in which the petitioners, who are grandchildren of James M. Goodwin, late of Hartford, deceased, and children of his deceased son, Henry W. Goodwin, pray for an account of the property which the respondent has received as trustee for them under the last will and testament of the said James M. Goodwin, and of the investments, rents, income and profits thereof, and the charges against the same, and for the payment to the petitioners of the balance which may be found due to them from the respondent, upon such accounting, and also for general relief.

It appears from the report of the committee to whom the bill of the petitioners was referred, that on the 2d day of February, 1870, the said James M. Goodwin made his last will and testament, by which, after directing his personal estate, except his stocks and bonds, to be sold, and the avails added to the general fund of his estate, and after providing for the payment of his debts and funeral expenses by his executor, and making bequests to his sisters, Mary G. Spencer and H. G. Wells, of five hundred dollars each, to his grandson, Frederick Goodwin, of one thousand dollars, and to his sister, Roxanna G. Wells, of four hundred dollars a year in four quarterly payments during her natural life, he directed that all the residue of his estate, except the interest he had in certain real estate in West Hartford, then occupied by his son, Henry W. Goodwin, including such sums as, at the time of his decease, his said son should be owing to him for money lent since May 1st, 1868, or paid for him on liabilities assumed by the testator since that time, or that should be paid out of

the estate of the testator for liabilities assumed by him since that time for the said Henry, should be divided into fifty equal parts, and disposed of the same in the following manner:

*First.* He gave to his daughter, Mary Brainard, the wife of the respondent, ten parts.

*Second.* He gave the use, income, interest and improvement of twenty parts to his son, James M. Goodwin, Jr., during his natural life, and at the decease of the said James he directed the same to be divided equally among the said James's children.

*Third.* The twenty parts remaining, and all the interest which the testator should have at his decease in the West Hartford real estate, and all such sums as he should have lent to or paid for his said son Henry, in claims or liabilities assumed since May 1st, 1868, and such sums as his estate should have to pay for liabilities assumed by him since that time, he gave to the respondent, upon the following trusts: That the said trustee might, at his discretion, sell all or any part of the estate so given him in trust and convey the same by good and sufficient deeds or otherwise, safely invest the avails of such sales, collect the income, and pay over the use, income and rent thereof, from time to time, at his discretion, to the said Henry W. Goodwin during his natural life, for the comfort and support of himself and family, and at the said Henry's decease, to pay and deliver over the same to his children in equal portions.

The testator then appointed the respondent executor of the will, and, on the 30th of March, 1870, died. The will was duly proved and approved by the court of probate on the 14th of April, 1870. The respondent accepted the trust of executor; and the court of probate limited six months for the presentation to him of claims against the testator's estate, which limitation expired on the 14th of October, 1870. The court of probate also allowed to the respondent, as executor, twelve months from the 14th of April, 1870, to settle the estate.

On the 18th of April, 1871, the respondent exhibited to the court of probate an account of his administration to that date,

which the court accepted; and on the 22d of June, 1872, he exhibited a supplementary account made up to the first of April, 1872, and showing a balance in favor of the estate of $74,603.98, which was accepted and allowed by the court of probate on the 22d of June, 1872. From the decree by which that account was so accepted and allowed, James M. Goodwin, Jr., appealed to the Superior Court. Reasons of appeal were duly filed, and a committee was appointed to find and report to the court the facts. The committee heard the parties with their evidence, and on the 20th of February, 1874, submitted his report to the court. Remonstrances against the acceptance of the report were filed by both appellant and appellee, and at the September term, 1874, the Superior Court heard the parties, and upon such hearing overruled both remonstrances, accepted the report of the committee, and adjudged and decreed that two items in the administration account allowed by the court of probate to the respondent—one of $1,725, which was a claim of the respondent for office rent, fuel, lights, &c., the other of $2,715, which was a claim of the respondent and his wife for supplies furnished, expenses incurred, and services rendered—were not due, and directed the court of probate to disallow them. The Superior Court also adjudged and decreed that the costs of the appeal, amounting to $282.97, should be paid by the respondent out of the testator's estate. But a copy of that decree was not presented to the court of probate until on or about the 22d of May, 1877, or more than a month after the present suit was commenced; and the court of probate, at the date of the report of the committee to whom the petitioners' bill was referred, had not corrected the administration account in accordance with that decree. That omission on the part of the court of probate cannot, however, affect the rights or liabilities of either of the parties. The apparent balance, therefore, in the hands of the respondent as executor of the will of James M. Goodwin, on the first day of April, 1872, was $78,761.75, instead of $74,603.98, as stated in the account accepted and allowed by the court of probate. The property from which that balance was made up consisted of

one hundred and ten shares of stock of the Ætna Fire Insurance Company, six shares of stock of the Phœnix National Bank, twelve shares of stock of the Connecticut River Company, $5,000 United States 5-20 bonds, one hundred and twenty acres of land in the state of Wisconsin, and $42,601.07 cash, including notes of the respondent.

Henry W. Goodwin, the father of the petitioners, died on the 14th of November, 1876.

The committee reports that of the items of property and cash above enumerated—less the sum due to the respondent for services since April, 1877, which should be estimated at one hundred and twenty-five dollars per annum—two-fifths belong to the petitioners under the terms of the will of their grandfather; and he expresses the opinion that it should be delivered and paid over to them by the respondent. And it was urged on the argument in behalf of the petitioners that it was the duty of the respondent, as executor, as soon as the appeal of James M. Goodwin, Jr., was determined in the Superior Court, to have caused a division of the property; and that as he has neglected and refused to perform that duty, he should be required, by a decree of the Superior Court, to pay to the petitioners two-fifths of the value of the estate in his hands as executor, in money. But the opinion expressed by the committee and the claim urged by the petitioners upon this part of the case, are opposed, not only to the declared intentions of the testator, but to the law providing for the distribution of testate estates. The will does, indeed, direct that the estate of the testator remaining after the payment of his funeral expenses, debts and legacies, should, with the exception of the West Hartford real estate, be divided into fifty equal parts, and that twenty of those parts should be held by the respondent as a trustee for the benefit of Henry W. Goodwin and his family during his life, and upon his death should be paid over and delivered in equal portions to his children; and it appears from the report of the committee that no such division had been made on the first day of October, 1877, when that report was submitted to the Superior Court. But it is very clear that if the time had

Clement *v.* Brainard.

then arrived for the making of such a division, the Superior Court has no jurisdiction to make it or to order it to be made by the respondent. That jurisdiction is conferred by law upon the court of probate. The statute conferring it is in these words:—"When a testator shall order an estate to be divided among two or more devisees or legatees without appointing any person to divide it, or if he appoint persons to divide it who shall refuse or be unable to do so, the court of probate shall appoint three disinterested persons to make the division; but if the devisees, legatees, or heirs shall be legally capable to act, and shall make a division, in writing, in the manner provided for the division of intestate estates, such division shall be valid." Gen. Stat., tit. 18, chap. 11, § 16, page 371. It is equally clear that no obligation rested upon the respondent to ask the court of probate to order a division or to appoint distributors to make one, until the death of Roxanna G. Wells, to whom the bequest of four hundred dollars a year during her natural life was made by the will. The committee reports on the first of October, 1877, that Mrs. Wells was dead; but when she died, whether before or after this suit was commenced, he does not report. So that it does not appear from the record before us that the respondent was guilty of any neglect of duty, as executor, at or before the time when this suit was commenced, in omitting to take the steps provided by law for a division of the estate. The respondent was bound as executor to pay to Mrs. Wells four hundred dollars a year, in quarterly payments, during her natural life; and being so bound he had the right (there being no order of the court of probate to the contrary,) to retain the entire body of the estate, except the West Hartford property, in his hands and undivided, until her death, to enable him to make the payments. He might, indeed, have retained a portion of the estate sufficient to yield an annual income of four hundred dollars, and have thus provided himself with the means required, and distributed the remainder. But he was under no legal obligation to do so, because he was not bound to take upon himself the risk of such a step. The will required a division of only that portion of the estate

which would remain after the funeral expenses, debts and legacies, including the legacy to Roxanna G. Wells, had been fully paid and satisfied. And it is manifest that until the provision in favor of Mrs. Wells had been fully satisfied, neither the amount of the estate which would remain for distribution, nor the property of which it would consist, could have been ascertained.

But if the death of Mrs. Wells had occurred before this suit was commenced, the Superior Court would have no jurisdiction to decree the payment to the petitioners of their share of the estate in money, until a division of the estate has been made according to the provisions of the will and a reasonable time has elapsed for the conversion of the estate into money, nor until the respondent has refused or unreasonably neglected, after distribution, to pay or deliver to the petitioners their portion of the estate. The will gives to the respondent no authority, before distribution, to convert the stocks and bonds, of which a large portion of the estate consists, into money, but by implication forbids it. It would, therefore, be unreasonable and unjust, as well as repugnant to the provisions of the will and of the law, to decree the payment to the petitioners, before distribution, of their share of the estate in money. But even after distribution it would be necessary for the court, in passing such a decree, to look beyond the facts reported by the committee to ascertain the value of the petitioners' share. For the respondent's liability to the petitioners in that case would not be for two-fifths of the balance of $78,761.75, which appeared from the report to have been in the respondent's hands on the first day of April, 1872, but would be for the value of two-fifths of the estate in his hands at the time of the distribution. Between those dates the estate might have greatly depreciated in value without any fault on the part of the respondent. And if such was the fact, it would be highly inequitable to compel him to bear the loss occasioned by the depreciation. On the other hand, if the property appreciated in value during the period mentioned, the petitioners would be entitled to and should have the benefit of the appreciation.

The West Hartford real estate stands upon different ground from the other property. That was devised to the respondent in trust for the benefit of Henry W. Goodwin during his natural life, with power to sell the same and invest the avails, and, upon the death of the said Henry, to pay and deliver the same in equal portions to his children. The respondent, in pursuance of the power so given him, sold that estate, and thereby assumed all the responsibilities of a trustee under the will in respect to it. He is, therefore, liable to acount for the same in this suit.

In behalf of the petitioners it is contended that the income of the twenty parts of the residue given to Henry W. Goodwin during his natural life, may be distinguished from the principal, so that the trust will attach to the former, if not to the latter.

But this court can not make such a distinction. The whole matter falls wholly within the jurisdiction of the probate court. It is not like the case of a definite annuity given by a will for which an action at law will lie, but is a gift of the income of a portion of the residue of the estate which clearly can not be determined until a final settlement of the administration account. And although a legatee for life, for whose support the legacy was intended, might be entitled under the will to a proportion of the whole income, yet it is clear that the court of probate alone can determine the amount to be paid over and make an order for its payment. There is to be deducted from the gross income whatever account the executor has for current expenses as well as a reasonable allowance for his services, and this last item can be determined alone by the court of probate. It would also be reasonable and in fact necessary to the safety of the executor, that the net income should not be entirely paid out, but that some portion should be reserved to protect the executor against a possible failure of income another year, the annuity to Mrs. Wells being an absolute one which the executor would be bound to provide for. And the court of probate alone can determine what amount should be reserved for this purpose.

Where, as suggested in this case, the estate is ample, and

final distribution is likely to be delayed, while parties stand in pressing need of their portions, it is not unusual for courts of probate to decree a partial distribution. This might have been done here, either as to principal or income, and doubtless would have been done on application to that court.

The respondent excepts to the action of the committee in charging him with compound interest upon the avails of the sale of the West Hartford property. The question raised by this exception has been considered and determined by the courts of this country and of England in numerous cases; and although the decisions are not harmonious, there is a clear preponderance of opinion and authority in support of the doctrine that, where a trustee employs the trust moneys in trade or business for his own personal benefit and refuses to render an account of the profits he has made by such use of the money, he shall be charged with compound interest. 2 Kent's Comm., 231; 2 Story Eq. Jur., § 1277; 2 Redf. on Wills, 881, 882; Perry on Trusts, § 671. Chancellor Kent states the rule in regard to interest upon trust funds to be, that where the trustee puts the trust money in trade, the *cestui que trust* will be entitled to take the profits of the trade, or compound interest where the trustee will not disclose the profits. "So where he neglects to put the trust money at interest and for an unreasonable time suffers it to lie idle, or mingles it with his own, the court will charge him with simple interest, and in cases of gross delinquency with compound interest." And he urges strong reasons in support of the doctrine. "It appears to me," he says, "that authority, both foreign and domestic, and the reason of the thing, preponderate alike in favor of the allowance of compound interest under the limitations stated, and that the total abandonment of the rule would operate in many cases most unjustly as respects the rights of the *cestui que trust*, and would introduce a lax discipline that would be dangerous to the vigilant and faithful administration of trust estates. It would be tempting trustees to keep in hand, for their own speculation and profit, the interest moneys of others without interest, contrary to their duty. If the trustee might go on and trade with trust moneys

and make no account of the profits and without any other penalty than the payment of simple interest, without annual rests on the capital so corruptly perverted, the temptation to abuse would be irresistible." 2 Kent's Comm., 231, in note *c.* "The object of this whole doctrine," says Judge Story, "is to compensate the *cestui que trust*, and to place him in the same situation as if the trustee had faithfully performed his own proper duty. It has even a larger and more comprehensive aim founded on public policy, which is to secure fidelity by removing temptation and by keeping alive a sense of personal interest and personal responsibility." 2 Story Eq. Jur., § 1278.

The report of the committee shows that the avails of the sale of the West Hartford real estate were not invested by the respondent, as the provisions of the will required, but were mingled with his own money, deposited in bank to his individual credit and used by him in his business for his personal benefit and advantage. And when called upon to render an account of the use he had made of the money and the profits which had accrued to him therefrom, he was unable to do so, and never has rendered such an account. There was, therefore, no error in the action of the committee charging the respondent compound interest on the avails of the sale of the West Hartford real estate. The committee properly refused to allow to the respondent the sum of two thousand three hundred and seventy-eight dollars, sixty-one cents, which he had charged in his account against Henry W. Goodwin; and another charge of seven hundred and seventy-two dollars, sixty-eight cents; because the effect of those charges, if allowed, would have been to enable the respondent to appropriate to the payment of a debt due to him from Henry W. Goodwin, moneys which, not having been applied to the support of the said Henry and his family in his life time, belonged, under the will of his father, to his children after his decease.

The committee erred in charging the respondent interest on a sum of nine thousand dollars, in his hands at the decease of the testator and belonging to his estate, prior to the 22d

day of June, 1872, when the respondent rendered his account as executor to the court of probate. It was not allowed by that court; and from the decree allowing the account Henry W. Goodwin took no appeal. James M. Goodwin, Jr., however, did take an appeal, and the committee who heard the appeal disallowed that item of interest, and reported his action in the matter to the Superior Court; and the report was by that court accepted. If Henry W. Goodwin or these petitioners felt aggrieved by the order of the court of probate allowing the account of the respondent as executor, without the item of interest referred to, he or they should, within the time limited by law, have appealed to the Superior Court. That was their only remedy, the statute not having given to that court jurisdiction to settle administration accounts except upon appeal from the decrees of the court of probate.

The Superior Court is advised to pass a decree in accordance with the views herein expressed. As a decree in that form will not affect the rights or interests of James M. Goodwin, Jr., or of Mrs. Brainard, the wife of the respondent, there was no reason for making them parties to this suit as moved by the respondent.

In this opinion PARK, C. J., and CARPENTER, J., concurred; PARDEE and GRANGER, Js., did not sit.

HOVEY, J. (dissenting).* It was obviously the intention and one of the main purposes of James M. Goodwin in making his will, to provide for his son, Henry W. Goodwin, and his family, a comfortable support during his life, and to secure to the petitioners two-fifths of the residue of his estate and its accumulations upon the said Henry's death. And it is the duty of the court to give effect to that intention so far as it can, consistently with the provisions of the will for other purposes and the established rules of law.

The will directs that the estate of the testator remaining after the payment of his funeral expenses, debts and legacies, except certain real estate in West Hartford, be divided into

---

* Judge HOVEY of the Superior Court was called in to sit in the case.

fifty parts, and gives ten parts to the respondent's wife, the income of twenty parts to his son, James M. Goodwin, Jr., during his life, and remainder to his children, and the other twenty parts, together with the West Hartford real estate, to the respondent, upon trust to sell the whole or any part of the same at his discretion, safely invest the avails, and pay over the use, income and rent thereof from time to time, at his discretion, to the said Henry W. Goodwin during his life, for the comfort and support of himself and family, and at the decease of the said Henry to pay and deliver the same in equal portions to his children.

These provisions, upon well established rules of interpretation, entitled the said Henry W. Goodwin to two-fifths of the entire net income of the residuary estate of the testator, or such portion of it as, in the judgment of the trustee, was necessary for the comfort and support of the said Henry during his life, to be computed from the testator's death. *Williamson* v. *Williamson*, 6 Paige, 298; *Lovering* v. *Minot et al.*, 9 Cush., 151; *Angerstein* v. *Martin*, Turn. & Russ., 234; *Hewitt* v. *Morris*, id., 241. They also entitled the petitioners, children of the said Henry, to that portion of the income which the respondent retained and had in his hands at the time of their father's death, with the interest thereon.

The respondent, who was appointed executor of the will, accepted the trust, gave bonds for its faithful performance, and on the 14th day of April, 1870, entered upon the discharge of his duties and proceeded to settle the estate. He paid the funeral expenses, debts, legacies, including the annuity to Roxanna G. Wells as it fell due, and all other lawful charges and expenses, and on the 22d of June, 1872, exhibited to the court of probate an account of his administration to the first of the preceding April. That account, which showed a balance of $74,603.98 in favor of the estate, was allowed by the court of probate, but the decree allowing it was appealed from by James M. Goodwin, Jr., to the Superior Court; and that court, at its September term, 1874, disallowed some of the respondent's charges, amounting to the sum of $4,157.76, and thus increased the residuum of the

estate to the sum of $78,761.75.   The property composing
that residuum consisted mainly of stocks, bonds and cash,
including notes of the respondent, yielding an annual net
income of about five thousand dollars.

The ordinary duties of the respondent as executor were
then at an end.   But in consequence of the bequest of a life
annuity of four hundred dollars to Roxanna G. Wells no
division of the entire principal or corpus of the estate could
be made, as Mrs. Wells was then living.   The respondent
was therefore allowed to retain in his hands the entire body
of the estate undivided, and to collect the income and pay
the annuity, until that obstacle to a division was removed.
Those facts, however, did not prevent the execution of the
trust in favor of Henry W. Goodwin and his family, because
the income of the estate and the charges upon it each year
were ascertainable without difficulty; and as the annuity
could properly be paid out of the income, there was no obsta-
cle to a division, according to the intention of the testator, of
the sum constituting the net income and the payment of it to
the several beneficiaries, from time to time, as the provisions
of the will required.   When therefore the ordinary duties of
the respondent, as executor, were at an end, and as early as
April 1st, 1872, the date of his administration account, he
began to do those acts which he was authorized only as trustee
to do, and he continued so to do from that time until the 1st
of October, 1877, the day upon which the committee appointed
to find the facts in this case submitted his report to the Supe-
rior Court.   During the whole of that period he separated
the net income from the body of the estate, divided it annu-
ally into fifty parts, credited twenty parts thereof in an
account kept by him with the trust estate, paid such portions
of the same as he, in the exercise of his discretion, deemed
proper, to Henry W. Goodwin during his life, and charged
the sums paid, in the same account, and retained the residue.
From 1872 to 1876 he rendered to the court of probate annu-
ally, on the first day of April, an account in his name as
"executor" or "executor, &c.," with the estate of the testa-
tor, in which he credited the estate the income he had received

from it during the year and charged the sums he had paid for taxes, probate fees, his own fees, and the Wells annuity; and the balance he charged as paid to, or credited in account with, James M. Goodwin, Henry W. Goodwin, and Mary J. Brainard, respectively, in the proportions of two-fifths to James, two-fifths to Henry, and one-fifth to Mrs. Brainard. And by an arrangement with the said Henry W. Goodwin, the respondent appropriated from the income credited in his account with the trust estate, the sum of three thousand one hundred and fifty dollars and sixty-one cents to the payment of two notes due to him individually from the said Henry W. Goodwin.

These acts of the respondent furnish conclusive evidence of his acceptance of the trust created by the will for the benefit of Henry W. Goodwin, his family and the petitioners, and subject him to all the duties and responsibilities of a trustee until he is discharged by due course of law. 3 Redf. on Wills, (2d ed.,) 529, 530; Perry on Trusts, §§ 268, 274. One of the duties of a trustee is to render to his *cestuis que trust* an account of the money he has received for their benefit or use, and to pay it over or apply it according to the terms of the trust; and if he refuses or neglects to perform that duty, its performance will be decreed by a court of equity upon a bill brought for that purpose. Gen. Stat., tit. 19, ch. 4, § 6. Courts of probate have power to call trustees to account for and concerning the estates intrusted to their charge, and to require them to render their accounts under oath for the year next preceding. Gen. Stat., tit. 18, ch. 11, § 32; tit. 4, ch. 5, § 39. But the jurisdiction thus conferred upon those courts is not exclusive. *Prindle* v. *Holcomb*, 45 Conn., 111. And the statute expressly provides that the Superior Court shall have jurisdiction of all suits in equity which are not within the *sole* jurisdiction of any other court. Gen. Stat., tit. 4, ch. 3, § 2. It is said, however, that the Superior Court has no jurisdiction to order an account to be rendered by the respondent of the income received by him from the estate of the testator for the benefit of Henry W. Goodwin and his family, because the amount cannot be ascertained until a

final settlement of the administration account in the court of probate.  But this claim is sufficiently answered, as it seems to me, by the fact that the amount was ascertained by the respondent himself every year, for four years at least, after the exhibition of his administration account of April 1st, 1872, to the court of probate, and was stated in the several annual accounts which he rendered to that court during those years.  Those accounts show that from the first of April, 1872, to the first of April, 1876, the gross income from the estate amounted to $21,566.03, and the charges against it for taxes, probate fees, fees of the respondent for his services, and the Wells annuity, during the same period amounted to $4,844.62, showing a balance of net income of $16,721.41.  And two-fifths of that balance, amounting to $6,688.57, is credited by the respondent to the trust estate, and thus completely separated from the body of the estate.  No account was rendered by the respondent to the court of probate of the income received for the year ending on the first day of April, 1877, or of the charges against it.  Nor do the accounts which were rendered to that court show the sums actually paid by the respondent to Henry W. Goodwin out of the net income credited to the trust estate.  But the committee finds that the income received by the respondent for the benefit of Henry W. Goodwin and his family and not paid over to him, and the income received for the petitioners since the said Henry's death, amounted, with compound interest, to the sum of $7,229.61 on the first day of April, 1877, and that the respondent now holds that sum, as well as the avails of the sale of the West Hartford real estate, for the sole use and benefit of the petitioners.

For these reasons I am of opinion that the respondent is accountable in this suit for the income received by him for the benefit of Henry W. Goodwin and his family, but not paid over to him during his life, and also for the income which he received after the said Henry's death; and that the action of the committee in charging the same to the respondent was right and should be sanctioned and approved by the court.

With the majority of the court upon all the other questions discussed in their opinion I fully concur.