******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ALTHEA DINAN *v.* ANNE PATTEN ET AL.
(SC 19204)

Palmer, Zarella, McDonald, Espinosa, Robinson and Vertefeuille, Js.

*Argued September 17, 2014—officially released June 16, 2015*

*William J. Kupinse, Jr.*, with whom were *Andrew M. McPherson*, and, on the brief, *Dennis M. Laccavole* and *Walter A. Flynn, Jr.*, for the appellant-cross appellee (plaintiff).

*Michael P. Kaelin*, with whom was *William N.*

*Wright,* for the appellees-cross appellants (named defendant et al.).

*Jeffrey A. Cooper* filed a brief as amicus curiae.

*Kelley Galica Peck, Richard A. Marone* and *Marilyn B. Fagelson* filed a brief for the Connecticut Bar Association as amicus curiae.

*Opinion*

ESPINOSA, J. The present case requires us to consider the method by which General Statutes § 45a-436[1] (spousal share statute) requires a surviving spouse's statutory share to be calculated. The plaintiff, Althea Dinan, appeals, and the defendant Anne Patten, individually and in her capacity as trustee,[2] cross appeals, from the judgment of the trial court affirming in part the decree of the Probate Court.[3] The plaintiff claims that the trial court improperly: (1) concluded that the value of the statutory share should be calculated based on the value of the estate as of the date of distribution, rather than the value of the estate at the time of the decedent's death; (2) determined that with respect to the period prior to the date of distribution, the plaintiff was entitled to the average yield of one third of the estate during that time; and (3) concluded that the Probate Court properly appointed distributors to set out the statutory share. In the cross appeal, the defendant claims that the trial court improperly concluded that: (1) the plaintiff's claim to a statutory share was not barred by the doctrines of waiver, estoppel and election of remedies; and (2) because state and federal estate taxes are not "debts and charges against the estate" pursuant to the spousal share statute, the statutory share should be calculated prior to the subtraction of taxes from the value of the estate. General Statutes § 45a-436 (a). We affirm the judgment of the trial court, and address each of the parties' claims in turn.

The record reveals the following relevant facts as found by the trial court, and procedural history. The plaintiff's husband, Albert A. Garofalo (decedent), died on July 21, 2000. Prior to his marriage to the plaintiff, the decedent executed a codicil to his preexisting will, thereby republishing his will, which had devised nothing to the plaintiff. *Dinan* v. *Marchand*, 279 Conn. 558, 560, 903 A.2d 201 (2006). The beneficiaries to the will were Patten, who is the decedent's daughter, and her three children, Nicole M. Toth, Aaron M. Toth and Alexis P. Toth. On October 27, 2000, the plaintiff timely elected her statutory share pursuant to the spousal share statute, § 45a-436 (c). See footnote 1 of this opinion. The plaintiff also challenged the validity of the will on the basis of undue influence and lack of testamentary capacity, and appealed to the Superior Court from the Probate Court's admission of the will and the codicil to probate. Following a jury trial, the trial court upheld the validity of the will in accordance with the jury's verdict, and that judgment was affirmed by this court on appeal. *Dinan* v. *Marchand*, supra, 560–61.

On May 2, 2008, the plaintiff requested that her statutory share be set out. See General Statutes § 45a-436 (e). The request, and the failure of the parties to reach an agreement as to the value of the statutory share, prompted the current administrator of the estate, Donat

C. Marchand,[4] to file a motion with the Probate Court seeking direction from the court as to how to determine the amount of the statutory share. The issues before us in this appeal pertain to the February 16, 2010 decree of the Probate Court, issued in response to the administrator's motion.

In its decision, the Probate Court first concluded that the statutory share should be calculated based on the value of the estate after the deduction of federal and state estate taxes. The court relied on the definition of the statutory share in the spousal share statute as "a life estate of one-third in value of all the property passing under the will, real and personal, legally or equitably owned by the deceased spouse at the time of his or her death, *after the payment of all debts and charges against the estate. . . .*" (Emphasis added.) General Statutes § 45a-436 (a). Because the court concluded that estate taxes are "charges" against the estate, it held that the statutory share must be set out after the taxes are deducted from the value of the estate. Next, the court exercised its discretion pursuant to § 45a-436 (e) to appoint distributors to set out the statutory share, observing that "[w]here distributors are appointed by a court of probate to divide an estate, they proceed upon the values determined by them as of the date of the distribution . . . ." *Willis* v. *Hendry*, 127 Conn. 653, 669, 20 A.2d 375 (1940). In determining the annual amount payable to the plaintiff on her statutory share, the Probate Court relied on this court's decision in *Bankers Trust Co.* v. *Greims*, 110 Conn. 36, 48, 147 A. 290 (1929), and concluded that once her statutory share is set out, the plaintiff will be due income on that share from the date of the decedent's death to the time of distribution, based on the average yield of the estate for that period. Finally, the court concluded that the statutory share should be valued as of the time that the final account is presented.

The plaintiff appealed to the trial court, which tried the matter de novo. See *In re Joshua S.*, 260 Conn. 182, 199, 796 A.2d 1141 (2002) ("[a]s a general matter, when a decision of the Probate Court is appealed to the Superior Court, a trial de novo is conducted"). The court first rejected the defendant's claim that, because the plaintiff had contested the decedent's will before requesting that her share be set out, she was barred from recovering her statutory share by the doctrines of waiver, estoppel, election of remedies and laches. Turning to the substantive issues, the trial court reversed in part the decree of the Probate Court, only as to that court's ruling that the value of the estate after the deduction of taxes should serve as the basis for the statutory share.[5] The court disagreed with the Probate Court's conclusion that estate taxes constituted "charges" against the estate pursuant to the spousal share statute. General Statutes § 45a-436 (a). The court concluded instead that, consistent with the public pol-

icy principles underlying the state's proration statute, General Statutes § 12-401, the benefit of the marital deduction should inhere solely to the plaintiff. The court concluded, therefore, that the statutory share must be calculated on the basis of the value of the estate before the deduction of taxes. As to all other issues, the trial court affirmed the Probate Court decree. This appeal and cross appeal followed.[6]

For simplicity, before we set forth our rationale as to each of the five issues presented in the appeal and the cross appeal, we first summarize our holdings as to all of those issues, in the order in which we will discuss them. We hold that the trial court properly concluded that: (1) the doctrines of waiver, estoppel and election of remedies do not bar the plaintiff from seeking her statutory share; (2) because state and federal estate taxes are not "debts and charges against the estate" pursuant to the spousal share statute, the statutory share should be calculated prior to the subtraction of taxes from the value of the estate; General Statutes § 45a-436 (a); (3) the value of the statutory share should be calculated based on the value of the estate as of the date of the final accounting in anticipation of distribution, rather than the value of the estate at the time of the decedent's death; (4) with respect to the period prior to the date when her statutory share is set out, the plaintiff is entitled to the average yield of one third of the estate during that time; and (5) the trial court properly concluded that the Probate Court properly appointed distributors to set out the plaintiff's statutory share. Accordingly, we affirm the judgment of the trial court.

I

THE DOCTRINES OF WAIVER, ESTOPPEL AND
ELECTION OF REMEDIES

The defendant argues that the trial court improperly rejected her claim that the doctrines of waiver, estoppel and election of remedies bar the plaintiff from claiming her statutory share because the plaintiff contested the decedent's will before she requested that her statutory share be set out.[7] As to all of these doctrines, the defendant relies on the fact that, between 2000 and 2006, the plaintiff challenged the validity of the decedent's will, on the basis that it was the product of undue influence, until this court ultimately rejected her claim, affirming the judgment of the Appellate Court, which had affirmed the judgment of the trial court. See *Dinan* v. *Marchand*, supra, 279 Conn. 562. In 2008, only after she had lost her appeal, the plaintiff requested that the administrator set out her statutory share. As we explain herein, the defendant has failed to satisfy her burden under any of these doctrines. Accordingly, we conclude that the plaintiff is not barred from seeking to recover her statutory share.

## A

### Waiver

The defendant claims that the plaintiff waived her right to recover her statutory share by first pursuing her challenge to the decedent's will. "Waiver is a question of fact. . . . [W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . Therefore, the trial court's conclusions must stand unless they are legally or logically inconsistent with the facts found or unless they involve the application of some erroneous rule of law material to the case." (Citations omitted; internal quotation marks omitted.) *AFSCME, Council 4, Local 704* v. *Dept. of Public Health*, 272 Conn. 617, 622–23, 866 A.2d 582 (2005).

"Waiver is the intentional relinquishment or abandonment of a known right or privilege. . . . Waiver does not have to be express, but may consist of acts or conduct from which waiver may be implied." (Citations omitted; internal quotation marks omitted.) *MSO, LLC* v. *DeSimone*, 313 Conn. 54, 64, 94 A.3d 1189 (2014). "In other words, waiver may be inferred from the circumstances if it is reasonable to do so." (Internal quotation marks omitted.) *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 292 Conn. 1, 58, 970 A.2d 656, cert. denied sub nom. *Bridgeport Roman Catholic Diocesan Corp.* v. *New York Times Corp.*, 558 U.S. 991, 130 S. Ct. 500, 175 L. Ed. 2d 348 (2009). "Waiver is based upon a species of the principle of estoppel and where applicable it will be enforced as the estoppel would be enforced. . . . Estoppel has its roots in equity and stems from the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed . . . ." (Citation omitted; internal quotation marks omitted.) *AFSCME, Council 4, Local 704* v. *Dept. of Public Health*, supra, 272 Conn. 623. "As a general rule, both statutory and constitutional rights and privileges may be waived." (Internal quotation marks omitted.) *Pereira* v. *State Board of Education*, 304 Conn. 1, 40, 37 A.3d 625 (2012).

The defendant's claim fails because the plaintiff timely elected her statutory share within the 150 day time period specified in § 45a-436 (c). See footnote 1 of this opinion. Given that timely election, the trial court properly concluded that the plaintiff's decision to first pursue her challenge to the validity of the will before requesting that the administrator set out her share was not sufficient evidence that she intentionally relinquished her right to the statutory share. Instead, the court properly interpreted the plaintiff's course of

action: the plaintiff chose to contest the will first, on the basis that if she succeeded in her challenge, it would be unnecessary for her to seek recovery of her statutory share. If she was unsuccessful, however—as she was— she could then recover her statutory share. Although the plaintiff requested that the statutory share be set out after her unsuccessful challenge to the validity of the will, nothing in the language of the spousal share statute suggests that a surviving spouse is required to *request* that the share be set out in order to preserve her right to the share. The only requirement imposed on the plaintiff in order to secure her right to the statutory share is to timely *elect* the share, and she complied with that requirement. See General Statutes § 45a-436 (c).

## B

### Estoppel and Election of Remedies

The defendant claims that the plaintiff is barred both by the doctrines of estoppel and election of remedies. Under the doctrine of election of remedies, the defendant contends that the intestate share that the plaintiff would have received had her challenge to the will succeeded is mutually exclusive of the remedy provided by the spousal share statute, because the right to a statutory share presumes the existence of a valid will. The defendant further claims that the trial court incorrectly relied on this court's decision in *DelVecchio* v. *DelVecchio*, 146 Conn. 188, 196, 148 A.2d 554 (1959), to conclude that the choice between a statutory share and an intestate one is an election of rights rather than remedies. The defendant also claims that the plaintiff's decision to contest the decedent's will before requesting that the administrator set out her statutory share caused the administrator to fail to set out the statutory share, thus estopping the plaintiff from recovering the statutory share.

The doctrines of estoppel and election of remedies both require the defendant to prove detrimental reliance.[8] We have explained that "any claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. . . . It is the burden of the party asserting a claim of estoppel to establish the existence of the elements essential to an estoppel . . . and whether that burden has been satisfied in a particular case is an issue of fact. . . . The trial court's factual determination will not be disturbed unless it is clearly erroneous." (Citations omitted; internal quotation marks omitted.) *Middlesex Mutual Assurance Co.* v. *Walsh*, 218 Conn. 681, 699, 590 A.2d 957 (1991). As for election of remedies, the party relying on the doctrine is required to show

that " 'the remedies are inconsistent and the other party materially changes his position in reliance on the manifestation.' 3 Restatement (Second), Contracts § 378 (1981)." *Connecticut Light & Power Co.* v. *DaSilva*, 231 Conn. 441, 449, 650 A.2d 551 (1994).

Because the trial court's factual finding that there was "little to no support in the record for a conclusion that the [defendant and the administrator] changed their position in detrimental reliance on the plaintiff's decision to contest the will" was not clearly erroneous, we conclude that the plaintiff's action is not barred by either the doctrine of estoppel or the doctrine of election of remedies. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Internal quotation marks omitted.) *Murtha* v. *Hartford*, 303 Conn. 1, 12–13, 35 A.3d 177 (2011). In making its finding that there was little or no support in the record to support the defendant's claim that there had been a change in position based on the plaintiff's decision to contest the will, the court relied on the fact that, although the defendant claimed that the failure to set out the statutory share was based on the plaintiff's pursuit of her challenge to the will, the defendant and the administrator contend that they were not required to set out the share until the plaintiff requested that they do so. The defendant has therefore admitted that she and the administrator did not believe they were required to set out the share until the plaintiff requested that it be set out. Given that concession, the trial court's conclusion that the link between the failure to set out the share and the ongoing litigation was "tenuous, at best" is not clearly erroneous.

## II

### TAXES

In her cross appeal, the defendant argues that the trial court improperly concluded that the plaintiff's statutory share must be calculated on the basis of the value of the estate before the deduction of federal and state estate taxes. The defendant contends that estate taxes constitute "charges against the estate" pursuant to the spousal share statute, and, therefore, that the plain language of the statute requires that the statutory share be calculated after the deduction of estate taxes from the value of the estate. The amici argue in their briefs;

see footnote 6 of this opinion; that, although the phrase "charges against the estate" in the spousal share statute is not defined in the statute, any ambiguity in the use of that phrase is resolved when the spousal share statute is understood in the context of Connecticut's proration statute; General Statutes § 12-401; and both the federal and state marital deduction statutory provisions. See 26 U.S.C. § 2056 (a) and (b) (7); General Statutes § 12-391 (f) (1). Specifically, the amici contend that those related statutes clarify that the phrase "charges against the estate" in the spousal share statute does not include estate taxes. We agree with the amici.

The question of whether the phrase "debts and charges against the estate" in § 45a-436 (a) includes federal and state estate taxes, and therefore requires that those taxes be deducted before calculating the statutory share "presents a question of statutory interpretation, over which we exercise plenary review, guided by well established principles regarding legislative intent." *Connecticut Podiatric Medical Assn.* v. *Health Net of Connecticut, Inc.*, 302 Conn. 464, 471, 28 A.3d 958 (2011); see *Hartford/Windsor Healthcare Properties, LLC* v. *Hartford*, 298 Conn. 191, 197–98, 3 A.3d 56 (2010) (explaining plain meaning rule under General Statutes § 1-2z and setting forth process for ascertaining legislative intent). As directed by § 1-2z, we begin with the statutory language. Section 45a-436 (a) provides: "On the death of a spouse, the surviving spouse may elect, as provided in subsection (c) of this section, to take a statutory share of the real and personal property passing under the will of the deceased spouse. The 'statutory share' means a life estate of one-third in value of all the property passing under the will, real and personal, legally or equitably owned by the deceased spouse at the time of his or her death, *after the payment of all debts and charges against the estate*. The right to such third shall not be defeated by any disposition of the property by will to other parties." (Emphasis added.)

Neither "debts" nor "charges" is defined in the spousal share statute, and nothing in the statute's language clarifies whether estate taxes qualify as debts or charges against the estate. Nor has this court previously undertaken to construe those terms. Moreover, our review of the use of the terms "debts" and "charges" in related statutes does not resolve the apparent ambiguity. For example, General Statutes § 45a-234, which sets forth the powers that a fiduciary has in administering an estate, includes the power of the fiduciary to "borrow money and to assume indebtedness . . . for the purpose of paying debts, taxes, administration expenses, or other charges against the estate . . . ." General Statutes § 45a-234 (8). The use of the word "other" suggests that debts, taxes and administration expenses are all different types of charges against the estate. Although that language provides some support for reading the

term "charges" in the spousal share statute to include taxes, § 45a-234 (8) also suggests that debts are subsumed within charges, which is inconsistent with the suggestion in the spousal share statute that debts and charges are distinct categories. See General Statutes § 45a-436 (a).

General Statutes § 12-351 also suggests that taxes are a type of charge or an administrative expense, providing that "[t]he following expenses of administration shall not be allowable deductions" against state succession and transfer taxes, and including among the list of various administrative expenses, not only taxes on the estate, but also a variety of expenses incurred during the settlement of the estate, including "expenses of care, maintenance or repair of real estate and buildings accrued subsequent to the death of the transferor . . . interest on obligations of the transferor or of the estate, which interest accrued subsequent to the death of the transferor . . . [and] all other charges and expenses of administration properly allocable against income." This language, particularly the use of the phrase "all other charges," provides further support for understanding taxes as simply one type of a charge or administrative expense of the estate. Similarly, § 38.2 (d) (2) of the Probate Court Rules requires that a fiduciary's account must include "a schedule listing the total amount of administration expenses in each major category, including, but not limited to, fiduciary fees, attorney's fees, accounting expenses, probate fees, *taxes*, probate bond premiums, publication expenses and *other expenses* . . . ." (Emphasis added.)

Other statutes, however, consistently treat estate taxes as distinct from debts or charges. See, e.g., General Statutes § 12-722 (n) (2) (listing separately "debts, taxes and expenses of administration"); General Statutes § 45a-235 (19) (listing estate taxes and administration expenses under different clauses); General Statutes § 45a-468*l* (listing separately "claims, taxes and expenses of administration"); Probate Court Rules § 37.1 (a) (9) (requiring fiduciary to provide statement that "all funeral expenses, administration expenses, taxes and claims have been paid"). Related statutes that directly address estate debts, charges and taxes, accordingly, do not resolve the question of whether taxes are a type of debt or charge against an estate for purposes of the spousal share statute.

Connecticut's proration statute, however, when understood in conjunction with the state and federal marital deductions, clarifies that the surviving spouse's statutory share must be calculated prior to the deduction of any estate taxes. Specifically, § 12-401 (a) provides in relevant part that "except when a testator otherwise directs in his will," the taxes of the estate must be "equitably prorated among the persons interested in the estate to whom . . . any benefit accrues.

Such proration shall be made in the proportion, as near as may be, that the value of the property, interest or benefit of each such person bears to the total value of the property, interests and benefits received by all such persons interested in the estate, except that, in making such proration, *allowances shall be made for any exemptions granted by the act imposing the tax and for any deductions allowed by such act for the purpose of arriving at the value of the net estate . . . .*" (Emphasis added.)

Under both federal and state estate tax provisions, a surviving spouse is entitled to a marital deduction with respect to her statutory share. The federal marital deduction is set forth in 26 U.S.C. § 2056. Subsection (a) of 26 U.S.C. § 2056 sets forth the general rule, providing: "For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsection (b), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate." Section 2056 (b) (7) of title 26 of the United States Code, entitled "Election with respect to life estate for surviving spouse," clarifies that subsection (a) applies to a surviving spouse's statutory share, and provides in relevant part: "In the case of qualified terminable interest property . . . (i) for purposes of subsection (a), such property shall be treated as passing to the surviving spouse . . . ." Our marital deduction provision, § 12-391 (f) (1), tracks the federal deduction: "For purposes of the tax imposed under this section, the value of the Connecticut taxable estate shall be determined taking into account all of the deductions available under the Internal Revenue Code of 1986, specifically including, but not limited to, the deduction available under Section 2056 (b) (7) of said code for a qualifying income interest for life in a surviving spouse."

We addressed the effect of the proration and marital deduction statutes on the taxation of an estate in *New York Trust Co.* v. *Doubleday*, 144 Conn. 134, 128 A.2d 192 (1956). In that case, the decedent's will divided the residue of the estate into five equal shares, and provided that the decedent's widow would receive one of those shares. Id., 137. The will provided that all estate taxes, including those attributable to specific devises, would be paid from the residuary estate. Id. In order to resolve a disagreement between the beneficiaries as to how the tax burden should be allocated among them in light of the proration and marital deduction statutes, the executors brought an action for construction of the will. Id., 137–38. Specifically, the surviving spouse contended that because she was entitled to the marital deduction, the proration statute required that no portion of the burden of the estate taxes should be allocated to her,

and that the tax burden should be equitably prorated among the remaining residuary legatees. Id., 139. Accordingly, she claimed that the residue should be divided first into five equal parts, then the tax burden should be allocated to the other four shares of the residue. Id., 143. The other beneficiaries, however, contended that the estate taxes should be deducted from the entire residue, which then should be divided into five equal shares. Id.

This court began its analysis with the observation that the proration statute was enacted in 1945. Id., 139. The court explained that "[p]rior to that time, the burden of federal and state estate taxes rested on the estate as a whole and, in the absence of a directive in the will to the contrary—a situation which through ignorance, thoughtlessness or carelessness often prevailed—the taxes were paid out of the residuary estate. . . . This created many instances of hardship upon and injustice to widows and children, who, as the natural objects of a testator's bounty, were customarily the residuary legatees and, as such, were frequently saddled with the entire tax, while other beneficiaries, more distantly related to the testator or not related at all, paid no taxes at all. The proration statute was contrived to circumvent these instances of hardship and injustice. It is not a taxing statute. . . . It assumes that a tax either has been or will be paid in conformity with the tax law and then undertakes to determine upon whom the ultimate burden of the tax shall be placed. In short, it takes over where the tax statute leaves off." (Citations omitted.) Id., 140. The proration statute, therefore, had shifted the previous presumption. After its passage, a will's silence regarding the allocation of the tax burden would trigger the operation of the proration statute to equitably prorate the tax burden among all the legatees, including those who had been left specific devises.

In *Doubleday*, because the testator had specified that all estate taxes should be paid from the residuary, this court concluded that the will prevented the proration statute from requiring equitable proration as to the specific devises. Adhering to the principle, however, that because of its burden shifting effect, "a testamentary directive against the prorating of taxes must be clear and unambiguous," we declined to read the will's tax provision broadly, and concluded that it did not prevent the proration statute from applying as to the allocation of the tax burden among the residuary legatees. Id., 141–42. We recognized that, but for the marital deduction, the required outcome would be a simple matter— the proration statute would require that the tax burden be borne equally by the five residuary legatees.

The proration statute specifically requires, however, that in determining the net estate for purposes of making the proration, allowance must be made for any deductions allowed by the statute imposing the tax.

General Statutes § 12-401 (a). In light of the marital deduction, therefore, this court held that the residue first had to be divided into five equal shares, then the estate taxes were required to be imposed on the other four shares, with the widow bearing no part of the tax burden. We observed that requiring the taxes to be paid before dividing the shares would have allowed the other beneficiaries "to enjoy the benefit of the marital deduction to the same extent as [would] the widow," a result that is prohibited by the proration statute. *New York Trust Co.* v. *Doubleday*, supra, 144 Conn. 143. We explained further: "Only through the allocation of the entire amount of the marital allowance to the value of the widow's bequest will the intent as well as the spirit of the proration statute be met, for the statute is based on the equitable principle that the estate taxes should be borne by those whose bequests contribute to the tax burden and, conversely, that all those whose legacies do not in any way create or add to that burden should not be required to bear it." (Internal quotation marks omitted.) Id., 144.

Our reasoning in *Doubleday* applies equally to the plaintiff's statutory share in the present case. The purpose of the marital deduction is to benefit the surviving spouse, and allowing other persons with an interest in the estate to share in that benefit would be contrary to that purpose, and, therefore, would also contravene the legislature's intent in the proration statute.[9] We conclude, therefore, that the plaintiff's statutory share must be calculated based on the pretax value of the estate.

III

TIMING OF VALUATION

We next address the plaintiff's claim that the trial court improperly concluded that the value of the statutory share should be calculated based on the value of the estate as of the date of distribution, rather than the value of the estate at the time of the decedent's death. The plaintiff argues that her interest properly is calculated based on the value of the decedent's estate at the time of his death, not the time of distribution. The plaintiff relies on the language in the spousal share statute, which defines the interest created by the statutory share as "a life estate of one-third in value of all the property passing under the will, real and personal, legally or equitably owned by the deceased spouse *at the time of his or her death*, after the payment of all debts and charges against the estate." (Emphasis added.) General Statutes § 45a-436 (a). The defendant contends that the plaintiff's statutory share entitles her to a life estate in a fractional share of the value of the decedent's estate, and, therefore, that the plaintiff's statutory share should be based on the value of the estate at the time of distribution rather than at the time of the decedent's death. We agree with the defendant that the value of the plaintiff's statutory share should

be calculated on the basis of the value of the estate as of the time of distribution.

The question of whether the statutory share created by the spousal share statute is one based on the value of the estate at the time of death or at the time of distribution presents a question of statutory interpretation. We are therefore guided by the same principles that governed our analysis in part II of this opinion. See *Hartford/Windsor Healthcare Properties, LLC* v. *Hartford*, supra, 298 Conn. 197–98. Accordingly, as dictated by § 1-2z, we turn first to the statutory language. The spousal share statute defines the statutory share as "a life estate of one-third in value of all the property passing under the will, real and personal, legally or equitably owned by the deceased spouse at the time of his or her death, after the payment of all debts and charges against the estate." General Statutes § 45a-436 (a).

The statutory language provides conflicting evidence of legislative intent. We first observe that the surviving spouse's statutory share is limited to a life estate in the real and personal property "passing under the will . . . ." This court previously has interpreted that phrase to exclude assets such as a trust savings account, because in such an account the transfer of ownership from the decedent to the beneficiary is not effected by way of a will but by virtue of the terms of the account itself, which specifies that upon the depositor/trustee's death, the funds would be payable to the named beneficiary. *Dalia* v. *Lawrence*, 226 Conn. 51, 57, 627 A.2d 392 (1993). We have not considered whether the phrase "passing under the will" suggests a specific time of valuation of the decedent's estate for the purpose of determining the amount of a spouse's statutory share, by, for instance, requiring that the estate be valued as of the time that ownership of the property has transferred.

One logical measure of the transfer of ownership is when title to the property vests in the beneficiaries. The statutory share is based on both the real and personal property "passing under the will." Legal and equitable title to real and personal property vests in the beneficiaries at different times. See *Gray* v. *Goddard*, 90 Conn. 561, 568, 98 A. 126 (1916) ("[t]he legal title to real property upon the death of the owner vests immediately in the heir or legatee, while the legal title to personal property passes to the executor or administrator, and such property is to be used for the payment of debts and the remainder distributed to the heirs"). Accordingly, because § 45a-436 (a) indicates that the statutory share is one in both the "real and personal property passing under the will," we do not read the phrase "passing under the will" to restrict the timing of the valuation of the decedent's estate to the time at which legal and equitable title vests in the beneficiaries.

The plaintiff contends that the phrase "in value . . .

at the time of his or her death"; General Statutes § 45a-436 (a); indicates a legislative intent to value the statutory share as of the time of the decedent's death. We do not read that phrase to clearly indicate an intent regarding the time of the valuation of the estate for purposes of calculating the statutory share. An equally rational reading of the language is that it is intended to limit the scope of the share to property that was owned by the decedent at the time of his or her death. Nothing in the statutory language compels the inference that the property's value at the time of death should be controlling for the calculation of the statutory share. The phrase "in value" was incorporated into the statutory language when the legislature abolished the widow's right of dower and replaced it with the spouse's right to elect a statutory share. See Public Acts 1877, c. 114. Pursuant to the right of dower, a widow had the "right . . . during her life, in one-third part of the real estate of which her husband died possessed in his own right . . . ." General Statutes (1875 Rev.) tit. 18, c. 11, art. 4, § 1. After the enactment of chapter 114 of the 1877 Public Acts, a surviving spouse had a right to a one-third life estate, not only in the decedent's real estate, but in the entire estate, including both real and personal property. Public Acts 1877, c. 114, § 3. The term "in value" is a practical consequence of extending the interest of the surviving spouse to the entire estate, which instantly rendered more complex the process of dividing the assets of the estate in order to determine the one-third share on which to base the statutory share of the surviving spouse. Thus, the phrase "in value," rather than indicating a legislative intent to base the statutory share on the value of the estate at the time of the decedent's death, reflects a recognition that in calculating the share, it will be necessary to ascertain the "value" of a variety of different types of assets.[10]

Another phrase in the spousal share statute, however, suggests a specific time frame for valuing the estate. That phrase specifically provides that the statutory share is calculated "after the payment of all debts and charges against the estate."[11] General Statutes § 45a-436 (a). This language provides clear support for the conclusion that the base value for the one-third share is the value at the time of distribution. The total amount of the debts and charges against an estate cannot be conclusively determined, and therefore paid, until sometime near the settlement of the estate, when the final account is filed by the fiduciary. See Probate Court Rules § 38.2 (d) (2) (requiring, for all fiduciary account filings, including final account, "a schedule listing the total amount of administration expenses in each major category, including, but not limited to, fiduciary fees, attorney's fees, accounting expenses, probate fees, taxes, probate bond premiums, publication expenses and other expenses"). Because charges against the estate may continue to accrue during the settlement

of the estate, it would not be possible to definitively determine the surviving spouse's share until the final account is filed. The phrase therefore provides strong support for the conclusion that the surviving spouse's share must be set out at the time of distribution.

The spousal share statute, which allows the court to appoint distributors to set out the statutory share; General Statutes § 45a-436 (a); see footnote 1 of this opinion; further reinforces the conclusion that the legislature intended that the statutory share be set out at the time of distribution. We have recognized that the duties of distributors "are statutory and ministerial; and they distribute the estate as they find it in the hands of the executor or administrator after the allowance of the final account." *Cone's Appeal from Probate*, 68 Conn. 84, 90, 35 A. 781 (1896). If the statutory share were intended to be set out prior to distribution, then the statute could not allow the court to appoint distributors to set out the share. If there were no other language in the spousal share statute relevant to the question of the legislature's intent, therefore, our task would be a simple one—absent contrary language, we would conclude that the language of the spousal share statute plainly and unambiguously indicates that the statutory share is to be calculated on the basis of the estate's value at the time of distribution.

There is, however, contrary language in the spousal share statute. Conflicting evidence of legislative intent is provided by subsection (d) of § 45a-436, which, when read together with General Statutes § 45a-320 (a), supports the conclusion that the legislature intended to allow the statutory share to be set out prior to distribution, and, therefore, that the base value for the statutory share cannot be the value of the estate at the time of distribution. Specifically, the spousal share statute provides: "If the Probate Court has allowed a support allowance under section 45a-320 from the deceased spouse's estate for support of the surviving spouse and for the support of his or her family, the surviving spouse shall not take his or her statutory share *until the expiration of the time for which the support allowance is made*." (Emphasis added.) General Statutes § 45a-436 (d). Section 45a-320 (a) provides in relevant part: "The Court of Probate may allow out of any real or personal estate of a deceased person in settlement before such court . . . such amount as it may judge necessary for the support of the surviving spouse or family of the deceased *during the settlement of the estate*." (Emphasis added.) An allowance of support to a surviving spouse pursuant to § 45a-320 is available only during the settlement of the estate. The language of § 45a-320 (a) suggests that it would be possible, but for the prohibition in § 45a-436 (d), for a surviving spouse's statutory share to be set out prior to the expiration of a support allowance.

Interpreting the spousal share statute to require that the statutory share be set out *only* at distribution, therefore, would render subsection (d) of § 45a-436 superfluous. See *Wilkins* v. *Connecticut Childbirth & Women's Center*, 314 Conn. 709, 719, 104 A.3d 671 (2014) ("in construing statutes, we presume that, there is a purpose behind every sentence, clause or phrase used in an act, and that no part of a statute is superfluous"). That is, unless it is possible for the statutory share to be set out prior to the settlement of the estate at distribution, there would be no need to prohibit a surviving spouse from taking his or her statutory share "until the expiration of the time for which the support allowance is made." General Statutes § 45a-436 (d). Accordingly, it must be at least *possible* for the statutory share to be set out prior to the final settlement of the estate, and, therefore, prior to the time of distribution. We observe, however, that although the statutory language supports the conclusion that it must be possible for the statutory share to be set out prior to distribution, nothing in the statutory language requires that the share be set out at the time of the decedent's death, or provides support for the plaintiff's contention that the statutory share should be based on the value of the estate at the time of the decedent's death. Nonetheless, because the conflicting provisions render the meaning of the spousal share statute ambiguous with respect to the appropriate time to value the estate for purposes of determining the statutory share, we turn to extratextual sources for guidance.

We begin by observing that there are three alternative theories by which a surviving spouse may claim entitlement to a share in the decedent's estate. The availability of those entitlements depends on the facts of the case. The first two are available only if there is a will. If there is a will and if the surviving spouse has been named as a beneficiary of the will, he or she may elect to inherit under the will, or, in the alternative, the surviving spouse may elect to take the statutory share pursuant to the spousal share statute. The spousal share statute specifically provides that these two entitlements are mutually exclusive. If a surviving spouse elects to take his or her share pursuant to the will, that share is taken in lieu of the statutory share, and vice versa. General Statutes § 45a-436 (b); see footnote 1 of this opinion. If the surviving spouse is not named as a beneficiary under the will, the spouse may elect to take the statutory share. See General Statutes § 45a-436 (a). If there is no will, or, to the extent that a will does not dispose of the entire estate, the surviving spouse is entitled to an intestate share. See General Statutes § 45a-437.

If a surviving spouse elects to take his or her share under the will, our law is clear. This court has long adhered to the rule that "distribution is to be made according to the value of the property at the time of

distribution." *Callahan* v. *Peltier*, 121 Conn. 106, 114, 183 A. 400 (1936); see also Probate Court Rules § 37.4 (a) ("[e]xcept as provided in subsection [b], the fiduciary shall report distributions on a financial report at fair market value as of the date of distribution"). The value of a surviving spouse's devised fractional share in the testator's estate, therefore, is based on the value of the estate at the time of distribution.

This court has explained the equitable principles underlying this rule. In *Clement* v. *Brainard*, 46 Conn. 174, 175–76 (1878), the dispute centered on the timing of the valuation of the residue of the testator's estate, for purposes of calculating the two-fifths share that the testator had left to his grandchildren. The court rejected a claim that the estate's value should be determined based on the value reported in a supplemental interim accounting. Id., 178. The appropriate timing of valuation, the court held, was at the time of distribution. Id., 180. As a practical matter, the court observed, because the testator's will granted an annuity to his sister during her natural life, the amount of the residue could not be determined until her death, an event that had not yet occurred at the time of the supplemental interim accounting. Id., 179. More importantly, the court concluded that it would be "unreasonable and unjust, as well as repugnant to the provisions of the will and of the law, to decree the payment to the petitioners, before distribution, of their share of the estate in money." Id., 180. The court explained that between the date of the supplemental interim accounting and the date when the distribution would be made, "the estate might have greatly depreciated in value without any fault on the part of the [fiduciary]. And if such was the fact, it would be highly inequitable to compel him to bear the loss occasioned by the depreciation. On the other hand, if the property appreciated in value during the period mentioned, the petitioners would be entitled to and should have the benefit of the appreciation." Id.; see also *Chase National Bank* v. *Schleussner*, 117 Conn. 370, 375–76, 167 A. 808 (1933) ("Determination of the net estate, if made by distributors appointed by the Court of Probate, would be based upon the value of the assets comprising the estate as found by them at the time the distribution was made; *Platt* v. *Platt*, 42 Conn. 330, 346 [1875]; and it is significant that in one case where the power to divide an estate was left by a testator to his widow and she died before completing it, we held that distributors appointed to complete the division should proceed upon the values as existing when they made it. *Walker* v. *Upson*, [74 Conn. 128, 131, 49 A. 904 (1901)].").

This court has applied the same rule to the distribution of an intestate share of an estate. *Walker* v. *Upson*, supra, 74 Conn. 131 (portion of estate passing by intestacy distributed per stirpes according to value of intestate estate at time of distribution). The statutory

provisions governing intestate distribution confirm that the surviving spouse's intestate share is based on the value of the estate at the time of distribution. Section 45a-437 (a) provides that the surviving spouse's share of the intestate estate varies depending on who else has survived the decedent, including parents, any children of the decedent who are also children of the surviving spouse, and any children of the decedent who are not also children of the surviving spouse. Although § 45a-437 does not specify the time at which the spouse's share should be distributed, General Statutes § 45a-438 (a), which governs the intestate distribution to children, provides that distribution shall be made after the distribution to the surviving spouse, and according to the estate's "value at the time of distribution . . . ."[12]

In light of the requirement in § 45a-438 (a), that the children's intestate shares must be valued as of the time of distribution, reading § 45a-437 to mean that the surviving spouse's share should be based on the estate's value at the time of the decedent's death would lead to absurd results. For instance, § 45a-437 (4) provides that "[i]f there are surviving issue of the decedent one or more of whom are not issue of the surviving spouse," the share that the surviving spouse shall take is "one-half of the intestate estate absolutely." Because there is no guarantee that the value of the estate will not appreciate or depreciate between the date of the decedent's death and the time of distribution, the meaning of "one-half" becomes unclear if the spouse's share is calculated as of the time of the decedent's death, while the children's share is valued as of the date of distribution. The one-half share could ultimately be either greater or lesser than an actual one half of the estate. Even more problematic, § 45a-437 (a) (1) provides that "[i]f there is no surviving issue or parent of the decedent," the surviving spouse shall take "the entire intestate estate absolutely . . . ." If the spouse's share is valued as of the time of the decedent's death, and the value of the estate appreciates between that date and distribution, the spouse's entitlement to the "entire intestate estate" would be thwarted.

We cannot discern any reasonable basis for valuating a surviving spouse's statutory share at a different time than a surviving spouse's intestate and testate shares. Like those shares, the statutory share of a surviving spouse must be calculated on the basis of the value of the estate at the time of distribution in order to avoid "unreasonable and unjust" results. *Clement* v. *Brainard*, supra, 46 Conn. 180. At the time of the decedent's death, it cannot be known how long it will take until the estate settles and the testate shares are distributed. It also would be impossible accurately to predict at the time of the decedent's death whether and how much the value of the decedent's estate will appreciate or depreciate. Accordingly, because the value of all other

shares is based on the value of the estate at the time of distribution, calculating the statutory share on the basis of the value of the estate at the time of the decedent's death would yield the result that the surviving spouse's statutory share of a life estate in "one-third" of the value of the decedent's estate could ultimately amount to either significantly greater or lesser than one-third in relation to the shares of the will's beneficiaries. If the value of the decedent's estate depreciated greatly between the time of his death and the time of distribution, it would even be possible for the beneficiaries of the will to receive nothing. Such a possibility would be contrary to basic principles of equity, and would also be contrary to the principle that when a surviving spouse "elects to take a statutory share in lieu of provision made for [her] by will, in setting off to [her] that share, the intent of the [testator] must be as little disturbed as is possible." *Shannon* v. *Eno*, 120 Conn. 77, 90–91, 179 A. 479 (1935).

The plaintiff's arguments to the contrary are unpersuasive. She contends that the policy principles underlying the creation of the surviving spouse's right to a statutory share justify a conclusion that the statutory share should be calculated based on the value of the estate at the time of the decedent's death. It is true that the spousal share statute has its origins in Connecticut's modified form of the right of dower,[13] which, we have explained, had the primary purpose of preventing husbands from entirely or substantially disinheriting their wives by will, and, in such cases, to make "suitable provision . . . for the maintenance and comfortable support of widows, after the decease of their husbands . . . ." *Brown's Appeal*, 72 Conn. 148, 153, 44 A. 22 (1899). The surviving spouse's statutory share first appeared in our law in 1877, when the legislature passed chapter 114 of the 1877 Public Acts (act). As we have explained, that act effected radical changes in the property rights of married women, including the abolition of the widow's right of dower, which was replaced with the gender neutral, surviving spouse's right to elect against the decedent's will. Public Acts 1877, c. 114; see *Mathewson* v. *Mathewson*, 79 Conn. 23, 25–36, 63 A. 285 (1906) (describing passage and effect of act). After the passage of the act, both husbands and wives who survived their spouses were entitled to the same statutory rights to the decedent's estate. See General Statutes (1887 Rev.) § 623.[14]

This court has recognized that the purpose of the statutory share, like the former right to dower, is "for the protection of the surviving spouse in making suitable provision for his [or her] maintenance and support . . . ." *Bankers Trust Co.* v. *Greims*, supra, 110 Conn. 48. The plaintiff incorrectly infers, however, that the best and only way to provide for that protection is to determine the statutory share on the basis of the estate's value at the time of the decedent's death. As we have

explained, that valuation could result in a surviving spouse receiving considerably less than the one-third life estate contemplated by the spousal share statute. Additionally, the plaintiff's policy argument fails to account for this court's decision in *Greims*, in which we held that a surviving spouse is entitled to income on his or her share from the date of the decedent's death. Id. That entitlement, and the support and maintenance that it may provide to a surviving spouse, is not dependent on the statutory share being based on the value of the estate as of the time of the decedent's death. Finally, although the purpose of the statutory share is to provide for the support and maintenance of the surviving spouse, the spousal share statute is not the primary means of protecting the spouse's support needs during the settlement of the estate. That purpose is served by § 45a-320, which affords the Probate Court significant discretion in fashioning an appropriate support allowance to meet the needs of the surviving spouse and/or the family of the decedent during the settlement of the estate.[15]

The plaintiff also contends that determining the value of the surviving spouse's statutory share on the basis of the estate's value at the time of distribution improperly leaves the estate open to manipulation to defeat the statutory share of the surviving spouse.[16] That claim fails to account both for the laws governing a fiduciary's duty to the estate and the authority of the Probate Court to oversee the settlement of an estate. First, the fiduciary charged with management of the estate's assets during the settlement of the estate owes a duty of loyalty to the estate. That duty requires the fiduciary to represent the rights of both beneficiaries and a surviving spouse who elects against the will. See *Cadle Co.* v. *D'Addario*, 268 Conn. 441, 455, 844 A.2d 836 (2004) ("[a]n executrix has a fiduciary responsibility to maintain an undivided loyalty to the estate . . . and must diligently represent the rights of the heirs and distributees and also those of creditors" [citation omitted; internal quotation marks omitted]); *Hall* v. *Schoenwetter*, 239 Conn. 553, 559, 686 A.2d 980 (1996) ("an executrix must remain loyal to the estate that she is administering and must not act out of self-interest or for the interests of parties other than the heirs, distributees, and creditors of the estate"). If the fiduciary acts in breach of that duty, the surviving spouse may bring an action on that basis. See *Cadle Co.* v. *D'Addario*, supra, 455.

Second, the Probate Court has broad powers to oversee the settlement of estates. For example, pursuant to General Statutes § 45a-139, a fiduciary is generally required to file a bond with the Probate Court. We have explained that "[t]he fiduciary's faithful performance of his legal duties is the condition on which a probate bond is executed; General Statutes § 45a-139 (b); and, accordingly, the failure of a fiduciary, such as a conservator, to perform those duties faithfully results in a

breach of the bond." *Jewish Home for the Elderly of Fairfield County, Inc.* v. *Cantore*, 257 Conn. 531, 538, 778 A.2d 93 (2001). The fiduciary also must file an inventory of all the property of the decedent with the Probate Court. General Statutes § 45a-341 (a). The purpose of the inventory is to protect "those interested in the estate as distributees or creditors," by providing them with the necessary information to ascertain their rights. *Lynch* v. *Skelly*, 138 Conn. 376, 378, 85 A.2d 251 (1951); see also G. Wilhelm et al., Settlement of Estates in Connecticut (3d Ed. 2015) § 4:1, pp. 4-3 through 4-4. The Probate Court also has the power to "call executors [and] administrators . . . to account concerning the estates entrusted to their charge . . . ." General Statutes § 45a-98 (a) (6). Finally, the Probate Court has the authority to remove a fiduciary pursuant to General Statutes § 45a-242 (a).

IV

INCOME DUE ON THE STATUTORY SHARE

The plaintiff next claims that the trial court improperly concluded that, with respect to the period prior to the date of distribution, she was entitled to the average yield of one third of the estate during that time. The plaintiff contends that because the estate has not earned a positive income since the decedent's death, she is entitled instead to a "reasonable rate of return" for the period between the decedent's death and the date when the statutory share is set out. We disagree. This court has directly addressed this issue in *Bankers Trust Co.* v. *Greims*, supra, 110 Conn. 48, in which we expressly held that as to a surviving spouse's statutory share, "[t]he rate of the income from the date of death to the actual setting out of the third will be the average yield of the estate for this period." Although the plaintiff notes that the estate that was at issue in *Greims* actually earned a positive income, we did not predicate our holding on that fact, or in any way suggest that our holding was limited to the factual circumstances of the case.

V

APPOINTMENT OF DISTRIBUTORS

Finally, the plaintiff claims that the trial court improperly concluded that the Probate Court did not abuse its discretion in appointing distributors. The plaintiff does not cite to any authority for her claim that the appointment of distributors constituted an abuse of discretion, but merely asserts that because, in her view, the duties of the distributors in the present case would be "far from 'statutory and ministerial,' " the court should not have appointed the distributors. The spousal share statute clearly grants the Probate Court the authority to act within its discretion to appoint distributors. General Statutes § 45a-436 (e); see footnote 1 of this opinion. The plaintiff has not made any claim sufficient to sug-

gest that the Probate Court's appointment of distributors constituted an abuse of that discretion. We agree with the trial court's observation that, because the Probate Court grounded its decision on the contentiousness between the parties of this estate, the appointment of distributors was appropriate.

The judgment is affirmed.

In this opinion the other justices concurred.

[1] General Statutes § 45a-436 provides: "(a) On the death of a spouse, the surviving spouse may elect, as provided in subsection (c) of this section, to take a statutory share of the real and personal property passing under the will of the deceased spouse. The 'statutory share' means a life estate of one-third in value of all the property passing under the will, real and personal, legally or equitably owned by the deceased spouse at the time of his or her death, after the payment of all debts and charges against the estate. The right to such third shall not be defeated by any disposition of the property by will to other parties.

"(b) If the deceased spouse has by will devised or bequeathed a portion of his or her property to his or her surviving spouse, such provision shall be taken to be in lieu of the statutory share unless the contrary is expressly stated in the will or clearly appears therein; but, in any such case, the surviving spouse may elect to take the statutory share in lieu of the provision of the will.

"(c) The surviving spouse, or the conservator or guardian of the estate of the surviving spouse, with the approval, after notice and hearing, of the Probate Court by which such conservator or guardian was appointed, shall, not later than one hundred fifty days after the mailing of the decree admitting the will to probate, file a notice, in writing, of his or her intention to take the statutory share with the Probate Court before which the estate is in settlement, and if such notice is not so filed, the surviving spouse shall be barred of such statutory share.

"(d) If the Probate Court has allowed a support allowance under section 45a-320 from the deceased spouse's estate for support of the surviving spouse and for the support of his or her family, the surviving spouse shall not take his or her statutory share until the expiration of the time for which the support allowance is made.

"(e) The statutory share shall be set out by the fiduciary charged with the administration of the estate or, in the discretion of the Probate Court on its own motion or on application by any interested person, by distributors appointed by the Probate Court. The statutory share may consist of personal property or real property, or both, according to the judgment of the fiduciary or distributors.

"(f) The provisions of this section with regard to the statutory share of the surviving spouse in the property of the deceased spouse shall not apply to any case in which, by written contract made before or after marriage, either party has received from the other what was intended as a provision in lieu of the statutory share.

"(g) A surviving spouse shall not be entitled to a statutory share, as provided in subsection (a) of this section, or an intestate share, as provided in section 45a-437, in the property of the other if such surviving spouse, without sufficient cause, abandoned the other and continued such abandonment to the time of the other's death.

"(h) The provisions of this section shall apply to estates of all persons dying on or after July 1, 1985."

We note that although § 45a-436 was amended subsequent to the events underlying this appeal; see Public Acts 2013, No. 13-81, § 6; the changes enacted by the legislature are not relevant to the issues present on appeal. In the interest of simplicity, we refer to the current revision of the statute.

[2] For convenience, all references in this opinion to the defendant refer both to Patten individually and in her capacity as a trustee, unless otherwise indicated. Where appropriate, we refer to Patten in her individual capacity by name.

The other defendants named in the complaint, Nicole M. Paul, Patten's daughter, Donat C. Marchand, administrator of the estate of Albert A. Garofalo, and David M. Lehn, Sandra W. Bisset, and Timothy W. Crowley, the distributors appointed by the Probate Court, are not parties to this appeal.

[3] The plaintiff appealed, and the defendant cross appealed, from the judg-

ment of the trial court to the Appellate Court. On October 2, 2013, this court transferred the appeal to itself pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[4] Patten originally had served as executrix of the estate, until the Probate Court removed her upon the plaintiff's petition, and appointed Marchand as administrator. *Dinan* v. *Marchand*, supra, 279 Conn. 562. For ease of discussion, when referring to actions in the administration of the estate, we use the term "administrator" to refer to the fiduciary managing the estate.

[5] The appeal from the February 16, 2010 decree was consolidated in the trial court with three other appeals that the plaintiff had taken from decrees of the Probate Court in this matter. The three appeals, Docket Nos. CV-09-4023634-S, CV-11-6012933-S and CV-12-6016447-S, challenged the Probate Court's decrees approving the administrators' interim and final accountings and investments, and allowing attorney's fees to be deducted from the defendant's share of the estate. The trial court affirmed the decision of the Probate Court as to each of those decrees, none of which is challenged in this appeal.

[6] After oral argument before this court, we invited the Connecticut Bar Association and Jeffrey A. Cooper, a professor of law at Quinnipiac University School of Law, to file briefs as amici curiae, to address two questions. First, "[w]hether a surviving spouse's elective 'statutory share' under . . . § 45a-436 should be determined on the basis of the value of the property subject to distribution at the time: (a) of the decedent spouse's death; (b) the surviving spouse's election of the statutory share; or (c) the statutory share is set out." Second, "[w]hether state and federal estate taxes are 'debts and charges against the estate' that must be paid prior to calculating a surviving spouse's statutory share under . . . § 45a-436 (a)."

Both parties accepted this court's invitation, and filed amicus briefs, in which they both answered that: (1) the statutory share should be valued as of the date that the statutory share is set out; and (2) state and federal estate taxes are neither debts nor charges against the estate, and should not be deducted prior to calculating the statutory share. Thereafter, this court granted the plaintiff's request to file a supplemental brief in response to the amicus briefs.

[7] At the trial court, the defendant also relied on the doctrine of laches. The defendant does not challenge the trial court's rejection of that claim on appeal.

[8] Because we conclude that the defendant failed to demonstrate detrimental reliance as required pursuant to the doctrine of election of remedies, we need not address her argument that the trial court improperly characterized the plaintiff's election of her statutory share as an election among different rights rather than remedies.

[9] In arguing that the estate taxes constitute "charges against the estate" pursuant to the spousal share statute, and, therefore, that the plaintiff's statutory share should be calculated based on the posttax value of the estate, the defendant relies on a number of decisions that predated the proration statute, and are, therefore, inapposite. See, e.g., *Bankers Trust* v. *Greims*, supra, 110 Conn. 36; *Corbin* v. *Townshend*, 92 Conn. 501, 103 A. 647 (1918); *Goodwin* v. *Chaffee*, 4 Conn. 163 (1822).

[10] The plaintiff also asserts that the values reported on federal estate tax forms should be used as the basis for determining the statutory share. She relies on 26 U.S.C. § 2031, the requirements of which govern the completion of Internal Revenue Service form 706, the United States Estate (and Generation-Skipping Transfer) Tax Return. Specifically, 26 U.S.C. § 2031 (a) provides that "[t]he value of the gross estate of the decedent shall be determined by including to the extent provided for in this part, the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated." The fact that a decedent's estate is valued as of the time of his death for tax purposes, however, does not require that the plaintiff's statutory share be calculated based on the estate's value at that time. As we explain herein, it is the value of the estate at the time of distribution that controls for purposes of determining the statutory share.

[11] In an apparent attempt to minimize the significance of this language, the plaintiff cites to *Cannon* v. *Cannon*, 111 Conn. 589, 151 A. 166 (1930). In that case, this court interpreted a provision of a testator's will bequeathing a life estate of one third of his property to his wife " '[a]fter the payment of [his] just debts and funeral expenses . . . .' " Id., 592. This court rejected the executor's interpretation of that language who claimed that the value of several legacies made to others should be deducted before calculating the value of the widow's one-third share. Id., 592–93. That case, therefore,

sheds no light on the significance of the phrase "after the payment of all debts and charges against the estate" in the spousal share statute.

[12] We observe that the mere fact that § 45a-438 provides that the children shall receive their shares after the surviving spouse receives his or her share does not rule out the time of distribution as the time at which a surviving spouse's share is set out and valued. Indeed, § 45a-438 (a) specifically provides that the children shall receive their intestate shares "[a]fter *distribution* has been made of the intestate estate to the surviving spouse . . . ." (Emphasis added.)

[13] For a description of the manner in which the right of dower in Connecticut originates in and differs from the right of dower pursuant to English common law, see *Brown's Appeal*, 72 Conn. 148, 44 A. 22 (1899).

[14] General Statutes (1887 Rev.) § 623 provides in relevant part: "On the death of a husband or wife married on or after the twentieth of April, eighteen hundred and seventy-seven, the survivor, except in cases mentioned in the proviso to this section, shall be entitled to the use, for life, of one-third in value of all the property, real and personal, legally or equitably owned by the other at the time of his or her death, after the payment of all debts and charges against the estate; such third to be set out by distributors appointed by the Court of Probate, in any property, real or personal or both, according to the judgment of such distributors. The right to such third shall not be defeated by any disposition of the property, by will, to other parties; but where there is no will, the survivor shall take such third absolutely, and if there are no children of the decedent or representatives of children, the survivor shall take one-half absolutely instead of one-third. Where the husband has, by will, devised or bequeathed a portion of his property to his surviving wife, or where the wife, by will, has devised or bequeathed a portion of her property to her surviving husband, such provision shall be taken to be in lieu of the share herein provided for, unless the contrary shall be expressly stated in the will, or shall clearly appear therein; but in any such case the party shall have his or her election whether to accept the provision of such will or take such statutory share. The wife shall, also, when, in the opinion of the Court of Probate, it is necessary, be allowed a reasonable sum from the estate of the husband, for her support and for the support of her family during the settlement of his estate; but in that case she shall not take her statutory share till after the expiration of the time for which such allowance is made; *provided always*, that the provisions of this section with regard to the statutory share of the surviving husband or wife in the property of the other shall not apply to any case where, by written contract made before or after marriage, either party has received from the other what was intended as a provision in lieu of such statutory share. Nor shall either party be entitled to such statutory share who, without sufficient cause, had abandoned the other, and had continued such abandonment to the time of the other's death." (Emphasis in original.)

[15] General Statutes § 45a-320 provides: "(a) The Court of Probate may allow out of any real or personal estate of a deceased person in settlement before such court, including a small estate being settled under the provisions of section 45a-273, such amount as it may judge necessary for the support of the surviving spouse or family of the deceased during the settlement of the estate.

"(b) In making such allowance the court may in its discretion include in its decree ordering such allowance any one or more of the following provisions, to the extent they are not mutually inconsistent: (1) A provision that such allowance shall run (A) for the entire period the estate is in settlement, or (B) for a fixed period of time not to exceed the period of settlement, in which case such allowance shall be subject to renewal by the court in its discretion; (2) a provision that such allowance is to be paid in a lump sum; (3) a provision that such an allowance made for a surviving spouse shall vest in such spouse retroactively as of the moment of death of his spouse so that it will be a fixed sum certain as of said date of death and shall not terminate with the subsequent death or remarriage of the surviving spouse, such allowance to be the absolute property of the surviving spouse, or, if deceased, of the estate of such surviving spouse, without restriction as to use, encumbrance or disposition and for the purpose of this section, the right to seek such a vested allowance shall be a vested right as of the date of death of the deceased spouse, and (4) a provision that such allowance shall be charged ultimately in whole or in part against any right the surviving spouse or other family member for whom an allowance is ordered may have to the income of the estate earned during the period of settlement.

"(c) The court may also allow for the use during the settlement of the

estate by such surviving spouse or family of any motor vehicle maintained by the decedent during his lifetime as a family car."

[16] We observe the irony of this particular argument advanced by the plaintiff, in light of the findings of both the Probate Court and the trial court that the plaintiff took " 'actions deliberately designed to undermine the economic viability of the estate.' "